Norman Nguyen
1200 Heirloom View
Okemos, MI 48864
Phone: (517) 381-5087
Fax:   (517) 381-5087
Email: nnguyen@ameritech.net
PRO SE

1:07CV0039

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN

Richard Alan Enslen
Senior, U.S. District Judge

| | |
|---|---|
| Norman Nguyen, an individual<br>Plaintiff,<br><br>vs.<br><br>ROBERT LARION, an individual, and<br>GOLD ROCK HOLDINGS, INC., a Nevada<br>corporation, and DOES 1-20 inclusive,<br>Defendants. | Civil No.:<br><br>FRAUD, NEGLIGENT MISREPRESENTATION,<br>BREACH OF FIDUCIARY DUTY VIOLATION OF<br>U.S. SECURITIES ACT OF 1934,<br>RULE 10(B) |

Plaintiff Norman Nguyen, hereinafter referred to as Plaintiff in this Complaint, claims against Defendants ROBERT LARION (hereinafter referred to as LARION) and GOLD ROCK HOLDINGS, INC. (hereinafter referred to as GOLD ROCK) as follows:

### JURISDICTION AND VENUE

1. This is a civil action brought under the Securities Exchange Act of 1934 ("Exchange Act"), and Exchange Act Rule 10b-5, and the common law concerning fraud and misrepresentation.

2. Jurisdiction of the Court is based on Sections 21 (d), 21 (e), and 27 of the Exchange Act [15 U.S.C. Sections 78u(d) and (e) and 78 aa], and Sections 1331 and 1332 of Title 28 of the United States Code.

[Summary of pleading] - 1

3. Plaintiff Norman Nguyen is a citizen of the State of Michigan and he resides in the State of Michigan. Norman Nguyen is a shareholder of Defendant GOLD ROCK HOLDINGS, INC.

4. Plaintiff is informed and believes that Defendant LARION is a citizen and resident of the State of Washington.

5. Defendant GOLD ROCK is a corporation duly organized and validly existing under the laws of the state of Nevada, whose principal place of business is in Mill Creek, Washington. During the relevant time period, GOLD ROCK'S common stock was registered pursuant to Section 12 (b) of the Exchange Act and traded on the pink sheet exchange. In 2004, GOLD ROCK'S principal place of business was Encinitas, California.

6. Defendants DOES 1 thru 20 inclusive, are sued herein under fictitious names. Their true names and capacities are unknown to Plaintiff. When their true names and capacities are ascertained, Plaintiff will amend this Complaint by inserting their true names and capacities herein. (Plaintiff is informed and believes, and thereon alleges, that each of the fictitiously named defendants is responsible in some manner for the occurrences herein alleged, and that Plaintiff's damages as herein alleged were proximately caused by those defendants.)

7. This Court has pendent jurisdiction over the state law claims which, together with those arising under the laws of the United States, have a common nucleus of operative facts and constitute a single controversy. Every issue of law and fact is wholly between citizens of different states. The total amount of the controversy, exclusive of interest and costs exceeds the sum of $75,000.00.

[**Summary of pleading**] - 2

8. Venue lies in this District pursuant to Section 27 of the Exchange Act [15 U.S.C. Section 78aa] because certain acts or transactions constituting the violations occurred in this District.

9. In connection with the acts, practices, and courses of business alleged herein, the Defendants, directly or indirectly, made use of the means and instruments of transportation and communication in interstate commerce, and of the mails and of the facilities of the national securities exchange.

## FACTUAL ALLEGATIONS

### [Violation of rule 10(b) of the Securities Act Of 1934 and Exchange Act Rule 10b-5]

10. From November 29, 2004, until September 28, 2006, Defendant LARION, as President and Chairman of the Board of Defendant GOLD ROCK prepared and released to the public information concerning contractual dealings between Gold Rock and its subsidiaries and various public and private entities that was false and misleading.

11. On November 29, 2004, the Defendants announced a Joint Venture Agreement which was being negotiated for the erection of four wind turbines with a return to the Company of 20% of the income going to the Company over the life of the Agreement with the power being sold to Xcel Energy of Colorado (attached Exhibit "A"). In fact, Defendant Gold Rock had no reasonable opportunity of obtaining the contract or the funding to produce the wind turbines for the project.

12. On December 1, 2004, the Defendants announced an agreement with BQ Energy, a New York management company whereby Gold Rock's wholly-owned subsidiary V.A.W.T. Industries LLC and BQ Energy would negotiate a changeover to V.A.W.T.'S Wind Turbine Technology in buildings that are currently serviced with conventional Electrical

[**Summary of pleading**] - 3

Grid Service (See Exhibit B). In fact, BQ Energy and Defendant Gold Rock had no reasonable opportunity of negotiating a changeover to V.A.W.T.'S Wind Turbine Technology in buildings that are currently serviced with conventional Electrical Grid Service.

13. On November 30, 2005, the Defendants announced the signing of a licensing agreement to manufacture Gold Rock's Z-Mix, a patented building material. The Defendants said that the Agreement was signed with Octagon Resources LTD, and further stated that Octagon is in the business of building, consulting and contracting commercial building and development projects, and that they also were in the business of constructing single-family homes, and that Octagon had ongoing projects in the Bahamas (see Exhibit C). In fact, Defendant Gold Rock had no reasonable opportunity of obtaining the any business from or through Octagon and had no reasonable expectation of being able to fund any of its obligations pursuant to the licensing agreement.

14. On January 4, 2006, the Defendants announced that its subsidiary V.A.W.T. Industries, LLC had finalized a purchase agreement for three wind turbines with estimated revenues of $1.5 million USD and delivery scheduled for the 3rd quarter of 2006 (see Exhibit D). In fact, Defendant Gold Rock had no reasonable opportunity of performing on the contract or any reasonable expectation of funding the production of the wind turbines.

15. On January 23, 2006 the Defendants announced that its subsidiary V.A.W.T. Industries, LLC had finalized a purchase agreement for fifteen (15) wind turbines with Blue Water Industries, LTD, and an additional option for five (5) turbines. They went on to state that the sales and options would generate and estimated $10.0 million USD of revenues and delivery would start in the 4th quarter

[**Summary of pleading**] - 4

of 2006 (see attached Exhibit E). In fact, Defendant Gold Rock had no reasonable opportunity of performing on the contract or any reasonable expectation of funding the production of the wind turbines.

16. On March 21, 2006 the Defendants announced the Company had signed documents for a $500,000,000 humanitarian endowment to build approximately 3,000 homes to replace ones destroyed by Hurricane Katrina (see attached Exhibit F). In fact, Defendant Gold Rock had no reasonable opportunity of getting or performing on any contract for a humanitarian endowment or any reasonable expectation of funding any such contract.

17. On September 28, 2006 the Defendants announced that they had negotiated a joint venture agreement between Gold Rock's wholly-owned subsidiary, Renewable Forestry Resources, LLC and Lakeway Transport Services, Inc. They went on to state that the project was expected to last for several years and it had gross income projections of $2.2 million per month (see attached Exhibit G). In fact, Defendant Gold Rock's wholly-owned subsidiary, Renewable Forestry Resources, LLC, had no reasonable opportunity of getting or performing on any contract with Lakeway Transport Services, Inc. or any reasonable expectation of funding any such contract.

18. As a proximate result of Defendants actions, they used the means or instrumentalities of interstate commerce, or by use of the mails and of the facilities of a national securities exchange, in connection with the purchase or sales of securities, have employed devices, schemes, or artifices to defraud, have made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or have

engaged in acts, practices or course of business which operate or would operate as a fraud or deceit upon the Plaintiff.

19. By reason of the foregoing Defendants have violated Section 10(b) of the Exchange Act [15 U.S.C. Section 78j(b)], and Exchange Act Rule 10b-5 [17 C.F.R. Section 240.10b-5].

20. Plaintiff has, as a result of Defendants' illegal actions suffered damages of $1,000,000.00.

21. The aforementioned conduct of the Defendants was an intentional misrepresentation, deceit, or concealment of a material fact known to Defendants with the intention on the part of Defendants of depriving Plaintiff of property or legal remedies, or otherwise causing injury, and was despicable conduct that subjected Plaintiff to cruel and unjust hardship in conscious disregard of Plaintiff's rights, so as to justify an award of exemplary and punitive damages.

**FRAUD**

22. Plaintiff repeats and realleges paragraphs 1 through 21 fully as if set forth herein.

23. On November 29, 2004, the Defendants announced a Joint Venture Agreement which was being negotiated for the erection of four wind turbines with a return to the Company of 20% of the income going to the Company over the life of the Agreement with the power being sold to Xcel Energy of Colorado (attached Exhibit "A").  In fact, Defendant Gold Rock had no reasonable opportunity of obtaining the contract or the funding to produce the wind turbines for the project.

24. The representations made by Defendants were in fact false. The true facts were that Defendant Gold Rock had no reasonable

opportunity of obtaining the contract or the funding to produce the wind turbines for the project.

25. At the time the Defendants made these representations, they knew the representations to be false and made them with the intent to deceive Plaintiff and to induce him to forego selling any of his shares of common stock of GOLD ROCK and to induce him to purchase more shares of said stock.

26. Defendants intended to and did induce the Plaintiff to forego selling any of his shares of common stock of GOLD ROCK and to induce him to purchase more shares of said stock and defraud the Plaintiff to act in reliance on these representations in the matter herein alleged, or with the expectation that Plaintiff would so act.

27. Plaintiff at the time these representations were made was ignorant of the falsity of Defendants' representations and believed them to be true. In reliance on these representations Plaintiff refrained from selling his common stock. Had Plaintiff known the true facts he never would have refrained from selling his common stock.

28. On December 1, 2004, the Defendants announced an agreement with BQ Energy, a New York management company whereby Gold Rock's wholly-owned subsidiary V.A.W.T. Industries LLC and BQ Energy would negotiate a changeover to V.A.W.T.'S Wind Turbine Technology in buildings that are currently serviced with conventional Electrical Grid Service (See Exhibit B).

29. The representations made by Defendants were in fact false. The true facts were that BQ Energy and Defendant Gold Rock had no reasonable opportunity of negotiating a changeover to V.A.W.T.'S

[**Summary of pleading**] - 7

Wind Turbine Technology in buildings that are currently serviced with conventional Electrical Grid Service.

30. At the time the Defendants made these representations, they knew the representations to be false and made them with the intent to deceive Plaintiff and to induce him to forego selling any of his shares of common stock of GOLD ROCK and to induce him to purchase more shares of said stock.

31. Defendants intended to and did induce the Plaintiff to forego selling any of his shares of common stock of GOLD ROCK and to induce him to purchase more shares of said stock and defraud the Plaintiff to act in reliance on these representations in the matter herein alleged, or with the expectation that Plaintiff would so act.

32. Plaintiff at the time these representations were made was ignorant of the falsity of Defendants' representations and believed them to be true. In reliance on these representations Plaintiff refrained from selling his common stock. Had Plaintiff known the true facts he never would have refrained from selling his common stock.

33. On November 30, 2005, the Defendants announced the signing of a licensing agreement to manufacture Gold Rock's Z-Mix, a patented building material. The Defendants said that the Agreement was signed with Octagon Resources LTD, and further stated that Octagon is in the business of building, consulting and contracting commercial building and development projects, and that they also were in the business of constructing single-family homes, and that Octagon had ongoing projects in the Bahamas (see Exhibit C).

34. The representations made by Defendants were in fact false. The true facts were that Defendant Gold Rock had no reasonable

opportunity of obtaining any business from or through Octagon and had no reasonable expectation of being able to fund any of its obligations pursuant to the licensing agreement.

35. At the time the Defendants made these representations, they knew the representations to be false and made them with the intent to deceive Plaintiff and to induce him to forego selling any of his shares of common stock of GOLD ROCK and to induce him to purchase more shares of said stock.

36. Defendants intended to and did induce the Plaintiff to forego selling any of his shares of common stock of GOLD ROCK and to induce him to purchase more shares of said stock and defraud the Plaintiff to act in reliance on these representations in the matter herein alleged, or with the expectation that Plaintiff would so act.

37. Plaintiff at the time these representations were made was ignorant of the falsity of Defendants' representations and believed them to be true. In reliance on these representations Plaintiff refrained from selling his common stock. Had Plaintiff known the true facts he never would have refrained from selling his common stock.

38. On January 4, 2006, the Defendants announced that its subsidiary V.A.W.T. Industries, LLC had finalized a purchase agreement for three wind turbines with estimated revenues of $1.5 million USD and delivery scheduled for the 3rd quarter of 2006 (see Exhibit D).

39. The representations made by Defendants were in fact false. The true facts were that Defendant Gold Rock had no reasonable opportunity of performing on the contract or any reasonable expectation of funding the production of the wind turbines.

40. At the time the Defendants made these representations, they knew the representations to be false and made them with the intent to deceive Plaintiff and to induce him to forego selling any of their shares of common stock of GOLD ROCK and to induce him to purchase more shares of said stock.

41. Defendants intended to and did induce the Plaintiff to forego selling any of his shares of common stock of GOLD ROCK and to induce him to purchase more shares of said stock and defraud the Plaintiff to act in reliance on these representations in the matter herein alleged, or with the expectation that Plaintiff would so act.

42. Plaintiff at the time these representations were made was ignorant of the falsity of Defendants' representations and believed them to be true. In reliance on these representations Plaintiff refrained from selling his common stock. Had Plaintiff known the true facts he never would have refrained from selling his common stock.

43. On January 23, 2006 the Defendants announced that its subsidiary V.A.W.T. Industries, LLC had finalized a purchase agreement for fifteen (15) wind turbines with Blue Water Industries, LTD, and an additional option for five (5) turbines. They went on to state that the sales and options would generate and estimated $10.0 million USD of revenues and delivery would start in the 4th quarter of 2006 (see attached Exhibit E).

44. The representations made by Defendants were in fact false. The true facts were Defendant Gold Rock had no reasonable opportunity of performing on the contract or any reasonable expectation of funding the production of the wind turbines.

[**Summary of pleading**] - 10

45. At the time the Defendants made these representations, they knew the representations to be false and made them with the intent to deceive Plaintiff and to induce him to forego selling any of his shares of common stock of GOLD ROCK and to induce him to purchase more shares of said stock.

46. Defendants intended to and did induce the Plaintiff to forego selling any of his shares of common stock of GOLD ROCK and to induce him to purchase more shares of said stock and defraud the Plaintiff to act in reliance on these representations in the matter herein alleged, or with the expectation that Plaintiff would so act.

47. Plaintiff at the time these representations were made was ignorant of the falsity of Defendants' representations and believed them to be true. In reliance on these representations Plaintiff refrained from selling his common stock. Had Plaintiff known the true facts he never would have refrained from selling his common stock.

48. On March 21, 2006 the Defendants announced the Company had signed documents for a $500,000,000.00 humanitarian endowment to build approximately 3000 homes to replace ones destroyed by Hurricane Katrina (see attached Exhibit F).

49. The representations made by Defendants were in fact false. The true facts were that Defendant Gold Rock had no reasonable opportunity of getting or performing on any contract for a humanitarian endowment or any reasonable expectation of funding any such contract.

50. At the time the Defendants made these representations, they knew the representations to be false and made them with the intent to deceive Plaintiff and to induce him to forego selling any of his

[**Summary of pleading**] - 11

shares of common stock of GOLD ROCK and to induce him to purchase more shares of said stock.

51. Defendants intended to and did induce the Plaintiff to forego selling any of his shares of common stock of GOLD ROCK and to induce him to purchase more shares of said stock and defraud the Plaintiff to act in reliance on these representations in the matter herein alleged, or with the expectation that Plaintiff would so act.

52. Plaintiff at the time these representations were made was ignorant of the falsity of Defendants' representations and believed them to be true. In reliance on these representations Plaintiff refrained from selling his common stock. Had Plaintiff known the true facts he never would have refrained from selling their common stock.

53. On September 28, 2006 the Defendants announced that they had negotiated a joint venture agreement between Gold Rock's wholly-owned subsidiary, Renewable Forestry Resources, LLC and Lakeway Transport Services, Inc. They went on to state that the project was expected to last for several years and it had gross income projections of $2.2 million per month (see attached Exhibit G). In fact, Defendant Gold Rock's wholly-owned subsidiary, Renewable Forestry Resources, LLC, had no reasonable opportunity of getting or performing on any contract with Lakeway Transport Services, Inc. or any reasonable expectation of funding any such contract.

54. The representations made by Defendants were in fact false. The true facts were that Defendant Gold Rock's wholly-owned subsidiary, Renewable Forestry Resources, LLC, had no reasonable opportunity of getting or performing on any contract with Lakeway Transport

Services, Inc. or any reasonable expectation of funding any such contract.

55. At the time the Defendants made these representations, they knew the representations to be false and made them with the intent to deceive Plaintiff and to induce him to forego selling any of him shares of common stock of GOLD ROCK and to induce him to purchase more shares of said stock.

56. Defendants intended to and did induce the Plaintiff to forego selling any of his shares of common stock of GOLD ROCK and to induce him to purchase more shares of said stock and defraud the Plaintiff to act in reliance on these representations in the matter herein alleged, or with the expectation that Plaintiff would so act.

57. Plaintiff at the time these representations were made was ignorant of the falsity of Defendants' representations and believed them to be true. In reliance on these representations Plaintiff refrained from selling his common stock. Had Plaintiff known the true facts he never would have refrained from selling his common stock

58. As a direct and proximate result of the fraudulent conduct of the Defendants as alleged the Plaintiff has been damaged in the amount of $50,000.00.

59. The aforementioned conduct of the Defendants was an intentional misrepresentation, deceit, or concealment of a material fact known to Defendants with the intention on the part of Defendants of depriving Plaintiff of property or legal remedies, or otherwise causing injury, and was despicable conduct that subjected Plaintiff to cruel and unjust hardship in conscious disregard of Plaintiff's

rights, so as to justify an award of exemplary and punitive damages.

### NEGLIGENT MISREPRESENTATION

60. Plaintiff repeats and realleges paragraphs 1 through 59 fully as if set forth herein.

61. On November 29, 2004, the Defendants announced a Joint Venture Agreement which was being negotiated for the erection of four wind turbines with a return to the Company of 20% of the income going to the Company over the life of the Agreement with the power being sold to Xcel Energy of Colorado (attached Exhibit "A").

62. When the Defendants made these representations they had no reasonable grounds for believing them to be true in that Defendant Gold Rock had no reasonable opportunity of obtaining the contract or the funding to produce the wind turbines for the project.

63. Defendants made these representations with the intention of inducing Plaintiff to act in reliance on them in the manner alleged herein, or with the expectation that Plaintiff would so act.

64. Plaintiff, at the time these representations were made and at all times since, believed the representations to be true and did forego selling any of his shares of common stock of GOLD ROCK and was induced to purchase more shares of said stock.

65. On December 1, 2004, the Defendants announced an agreement with BQ Energy, a New York management company whereby Gold Rock's wholly-owned subsidiary V.A.W.T. Industries LLC and BQ Energy would negotiate a changeover to V.A.W.T.'S Wind Turbine Technology in buildings that are currently serviced with conventional Electrical Grid Service (See Exhibit B).

66. When the Defendants made these representations they had no reasonable grounds for believing them to be true in that Defendant

[**Summary of pleading**] - 14

Gold Rock had no reasonable opportunity of negotiating a changeover to V.A.W.T.'S Wind Turbine Technology in buildings that are currently serviced with conventional Electrical Grid Service.

67. Defendants made these representations with the intention of inducing Plaintiff to act in reliance on them in the manner alleged herein, or with the expectation that Plaintiff would so act.

68. Plaintiff, at the time these representations were made and at all times since, believed the representations to be true and did forego selling any of his shares of common stock of GOLD ROCK and was induced to purchase more shares of said stock.

69. On November 30, 2005, the Defendants announced the signing of a licensing agreement to manufacture Gold Rock's Z-Mix, a patented building material. The Defendants said that the Agreement was signed with Octagon Resources LTD, and further stated that Octagon is in the business of building, consulting and contracting commercial building and development projects, and that they also were in the business of constructing single-family homes, and that Octagon had ongoing projects in the Bahamas (see Exhibit C).

70. When the Defendants made these representations they had no reasonable grounds for believing them to be true in that Defendant Gold Rock had no reasonable opportunity of obtaining the any business from or through Octagon and had no reasonable expectation of being able to fund any of its obligations pursuant to the licensing agreement.

71. Defendants made these representations with the intention of inducing Plaintiff to act in reliance on them in the manner alleged herein, or with the expectation that Plaintiff would so act.

72. Plaintiff, at the time these representations were made and at all times since, believed the representations to be true and did forego

[**Summary of pleading**] - 15

selling any of his shares of common stock of GOLD ROCK and was induced to purchase more shares of said stock.

73. On January 4, 2006, the Defendants announced that its subsidiary V.A.W.T. Industries, LLC had finalized a purchase agreement for three wind turbines with estimated revenues of $1.5 million USD and delivery scheduled for the 3rd quarter of 2006 (see Exhibit D).

74. When the Defendants made these representations they had no reasonable grounds for believing them to be true in that Defendant Gold Rock had no reasonable opportunity of obtaining any business from or through Octagon and had no reasonable expectation of being able to fund any of its obligations pursuant to the licensing agreement.

75. Defendants made these representations with the intention of inducing Plaintiff to act in reliance on them in the manner alleged herein, or with the expectation that Plaintiff would so act.

76. Plaintiff, at the time these representations were made and at all times since, believed the representations to be true and did forego selling any of his shares of common stock of GOLD ROCK and was induced to purchase more shares of said stock.

77. On January 23, 2006 the Defendants announced that its subsidiary V.A.W.T. Industries, LLC had finalized a purchase agreement for fifteen (15) wind turbines with Blue Water Industries, LTD, and an additional option for five (5) turbines. They went on to state that the sales and options would generate and estimated $10.0 million USD of revenues and delivery would start in the 4th quarter of 2006 (see attached Exhibit E).

78. When the Defendants made these representations they had no reasonable grounds for believing them to be true in that Defendant Gold Rock had no reasonable opportunity of obtaining the any

[**Summary of pleading**] - 16

business from or through Blue Water Industries, LTD, and had no reasonable expectation of being able to fund any of its obligations pursuant to the licensing agreement.

79. Defendants made these representations with the intention of inducing Plaintiff to act in reliance on them in the manner alleged herein, or with the expectation that Plaintiff would so act.

80. Plaintiff, at the time these representations were made and at all times since, believed the representations to be true and did forego selling any of his shares of common stock of GOLD ROCK and was induced to purchase more shares of said stock.

81. On March 21, 2006 the Defendants announced the Company had signed documents for a $500,000,000 humanitarian endowment to build approximately 3000 homes to replace ones destroyed by Hurricane Katrina (see attached Exhibit F).

82. When the Defendants made these representations they had no reasonable grounds for believing them to be true in that Defendant Gold Rock had no reasonable opportunity of obtaining the humanitarian endowment, and had no reasonable expectation of being able to fund any of its obligations pursuant to the endowment.

83. Defendants made these representations with the intention of inducing Plaintiff to act in reliance on them in the manner alleged herein, or with the expectation that Plaintiff would so act.

84. Plaintiff, at the time these representations were made and at all times since, believed the representations to be true and did forego selling any of his shares of common stock of GOLD ROCK and was induced to purchase more shares of said stock.

85. On September 28, 2006 the Defendants announced that they had negotiated a joint venture agreement between Gold Rock's wholly-owned subsidiary, Renewable Forestry Resources, LLC and Lakeway

Transport Services, Inc. They went on to state that the project was expected to last for several years and it had gross income projections of $2.2 million per month (see attached Exhibit G).

86. When the Defendants made these representations they had no reasonable grounds for believing them to be true in that Defendant Gold Rock had no reasonable opportunity of getting or performing on any contract with Lakeway Transport Services, Inc. or any reasonable expectation of funding any such contract.

87. Defendants made these representations with the intention of inducing Plaintiff to act in reliance on them in the manner alleged herein, or with the expectation that Plaintiff would so act.

88. Plaintiff, at the time these representations were made and at all times since, believed the representations to be true and did forego selling any of his shares of common stock of GOLD ROCK and was induced to purchase more shares of said stock.

89. As a direct and proximate result of the fraudulent conduct of the Defendants as alleged the Plaintiff have been damaged in the amount of $50,000.00.

### BREACH OF FIDUCIARY DUTY

90. Plaintiff repeats and realleges paragraphs 1 through 89 fully as if set forth herein.

91. Defendant GOLD ROCK had a fiduciary to its shareholders that included the duty not to defraud or misrepresent its position to its shareholders.

92. Defendant LARION as an officer and director of Defendant GOLD ROCK had a fiduciary to the shareholders of GOLD ROCK that included the duty not to defraud or misrepresent its position to its shareholders.

93. Defendants breached their respective duties to the Plaintiff, who was and is a shareholder of GOLD ROCK, by fraudulently misstating the existence of viable contracts, business arrangements, and incomes potential and by negligently misrepresenting the same to the general public and the shareholders.

94. As a direct and proximate result of the fraudulent conduct of the Defendants as alleged the Plaintiff has been damaged in the amount of $1,000,000.00.

WHEREFORE, Plaintiff prays judgment against each of the Defendants:

1. In the amount of $1,000,000.00 actual damages for Securities violations and breach of fiduciary duty;
2. In the amount of $50,000.00 actual damages for fraud and negligent misrepresentation;
3. $100,000.00 punitive damages.
4. Interest at the rate of 10% per annum from the November 29, 2004;
5. Plaintiff's costs and expenses incurred herein;
6. Such other and further relief as the Court deems just and proper.

DEMAND FOR A JURY TRIAL

Plaintiff Norman Nguyen hereby demands trial by jury of all eligible claims.

Dated: 01/16/07

Norman Nguyen,
Pro Se